UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **JOHN DOE**, <br><br> **Plaintiff,** <br><br> v. <br><br> **KRISTI NOEM**, Secretary of the Department of Homeland Security; <br><br> **TODD LYONS**, Acting Director of the Immigration and Customs Enforcement; <br><br> **PAMELA JO BONDI**, Attorney General of the United States, <br><br> **Defendants.** | No.  1:25-cv-11037 |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

**INTRODUCTION**

1. Plaintiff Student Doe is a recent graduate of Tufts University School of Engineering. He completed a dual bachelor's degree in computer science and mechanical engineering in May of 2024. Student Doe is in lawful F-1 status and was actively employed by a biotechnology company in Cambridge Massachusetts. He was employed as part of the Optional Practical Training Program (OPT) which generally allows recent graduates to engage in temporary employment related to their major area of study. He was actively engaged in vital biotechnology research and development until he was contacted by a member of his universities' international student's office and informed that his SEVIS record has been abruptly terminated. He was forced to immediately cease work for the company.

2. He is one of hundreds, if not more, F-1 students nationwide whose SEVIS record has been abruptly and unlawfully terminated by U.S. Immigration and Customs Enforcement

1

(ICE), effectively stripping them of their ability to remain a student in the United States or complete their post graduate practical training. [1]

3. Student Doe began his studies as an undergraduate at Tufts University in Medford Massachusetts. He was drawn to study in the United States because of the unique opportunities for multi-disciplinary curriculum that American colleges offer, and to Massachusetts in particular as the academic nerve center of the world. He completed his dual degree and was planning to complete OPT before returning for Tufts for a master's degree.

4. Doe's dream of finishing his OPT and returning to Tufts for a master's degree is now in severe jeopardy because of DHS's decision to abruptly terminate his F-1 student status under the SEVIS system without affirmatively notifying him or even his school prior to the termination of the SEVIS record.

5. The Student and Exchange Visitor Information Systems (SEVIS) is a government database that tracks international students' compliance with their F-1 status. ICE, through the Student and Exchange Visitor Program (SEVP), uses SEVIS to monitor student status. Following the revocation of their visa, SEVP terminated Plaintiff's SEVIS record and marked Plaintiff as "Otherwise Failing to Maintain Status" with a narrative citing "OTHERWISE FAILING TO MAINTAIN STATUS – Individual identified in criminal records check and/or has had their VISA revoked. SEVIS record has been terminated."

6. The termination of a SEVIS record effectively ends F-1 student status. Even when a visa is revoked, however, ICE is not authorized to terminate Plaintiff's student status. The

---

[1] Elizabeth Román, "5 Umass Amherst students have visas revoked," *NHPR* (Apr. 5, 2025), https://www.nhpr.org/2025-04-05/5-umass-amherst-students-have-visas-revoked; Katy Stegall and Esmeralda Perez, "Five USCD students' visas revoked and additional person deported, university confirms," *CBS8* (Apr. 5, 2025), https://www.cbs8.com/article/news/local/five-ucsd-students-f-1-visas-revoked-additional-deported/509-2c257e52-4a31-42f7-8e3e-f6bd92a287b3; Molly Farrar, "Feds quietly revoke visas of multiple Umass, Harvard students," *Boston.com* (Apr. 6, 2025), https://www.boston.com/news/local-news/2025/04/06/feds-quietly-revoke-visas-of-multiple-umass-harvard-students/.

grounds cited by ICE in the SEVIS termination do not provide legal authority to terminate Plaintiff's SEVIS record. An F-1 visa controls a student's entry into the country, not their continued lawful presence once admitted. Plaintiff was in full compliance with the terms of his F-1 status and had not engaged in any conduct that would warrant termination of his status

7. Rather, DHS's policy of unlawfully terminating SEVIS records based on visa revocations appears to be designed to coerce students, including Plaintiff, into abandoning their studies and "self-deporting" despite not violating their status. If ICE believes a student is deportable for having a revoked visa, or other removable offenses, it has the authority to initiate removal proceedings and make its case in court. It cannot, however, misuse SEVIS to circumvent the law, strip students of status, and drive them out of the country without process

8. At the most elemental level, the United States Constitution requires notice and a meaningful opportunity to be heard. *See Choeum v. I.N.S.*, 129 F.3d 29, 38 (1st Cir. 1997) ("At the core of [a noncitizen's] . . . due process rights is the right to notice and the nature of the charges and a meaningful opportunity to be heard."); *Matthews v. Eldridge*, 424 U.S. 319, 322 (1976). No such process was provided here.

9. To be clear, Plaintiff does _not_ challenge the revocation of his F-1 _visa_ in this case, even assuming that his visa was actually revoked. Instead, Plaintiff brings this lawsuit to challenge DHS's unlawful termination of his F-1 student[2] status under the SEVIS system.[3] Indeed, the revocation of an F-1 visa does _not_ constitute a failure to maintain F-1 student status and, therefore, cannot serve as a basis for termination of F-1 student status in the SEVIS system. Nor does the creation of any record related to criminal enforcement provide a basis to revoke F-1 status

---

[2] Upon information and belief, Plaintiff has received no direct communications from the U.S. State Department regarding the revocation of his F-1 visa.
[3] There is a difference between an F-1 student visa and an F-1 student status. The F-1 student visa refers only to the document noncitizen students receive to enter the United States, whereas F-1 student status refers to students' formal immigration classification in the United States once they enter the country.

for person who are present in the United States.  For the agency-initiated termination of F-1 student status under the SEVIS system, DHS's ability to terminate F-1 student status "is limited by [8 C.F.R.] § 214.1(d)." *See Jie Fang v. Director U.S. Immigration & Customs Enforcement*, 935 F.3d 172, 185 n.100 (3d Cir. 2019).  Under this 8 C.F.R. § 214.1(d), DHS can terminate F-1 student status under the SEVIS system <u>only</u> when: (1) a previously granted waiver under 8 U.S.C. § 1182(d)(3) or (4) is revoked; (2) a private bill to confer lawful permanent residence is introduced in Congress; or (3) DHS publishes a notification in the Federal Register identifying national security, diplomatic, or public safety reasons for termination. In other words, under this regulation, the revocation of an F-1 visa does not provide a basis to terminate F-1 student status under the SEVIS system.  DHS's own policy guidance confirms that "[v]isa revocation is <u>not</u>, in itself, a cause for termination of the student's SEVIS record."  ICE Policy Guidance 1004-04 – Visa Revocations (June 7, 2010) (emphasis added).[4]  Rather, if the visa is revoked, <u>the student is permitted to pursue his course of study in school</u>, but upon departure, the SEVIS record is terminated, and the student must obtain a new visa from a consulate or embassy abroad before returning to the United States.  *See* Guidance Directive 2016-03, 9 FAM 403.11-3 – VISA REVOCATION (Sept. 12, 2016).[5]  If DHS wishes to terminate F-1 student status under the SEVIS system after (or independent of) revocation of a F-1 visa, DHS must comply with 8 C.F.R. § 214.1(d).  *See Jie Fang*, 935 F.3d at 185 n.100.  DHS has not done so here.

## JURISDICTION AND VENUE

10.     Jurisdiction is proper under 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1346 (federal defendant),  and 5 U.S.C. § 702 (right of review).

11.     Defendants have waived their sovereign immunity for suits seeking injunctive relief

---

[4] https://www.ice.gov/doclib/sevis/pdf/visa_revocations_1004_04.pdf.

[5] https://www.aila.org/library/dos-guidance-directive-2016-03-on-visa-revocation.

4

against constitutional and statutory violations. 5 U.S.C. § 702.

12. Venue is proper in the District of Massachusetts under 28 U.S.C. § 1391 as Plaintiff Doe resides in Massachusetts.

## PARTIES

13. Plaintiff Student Doe is a foreign national who currently resides in Massachusetts. He has resided in Massachusetts since September of 2019. From September 2019 until May of 2024, he was a full-time student at Tufts Universities' School of Engineering. After graduation, he has been employed at a biotechnology company in Cambridge, Massachusetts. A motion to proceed pseudonymously is filed concurrently with this Complaint.

14. Defendant Kristi Noem is the Secretary of the Department of Homeland Security ("DHS"). She is sued in her official capacity.

15. Defendant Todd Lyons is the Acting Director of the Immigration and Customs Enforcement ("ICE"), a component of DHS. He is sued in his official capacity.

16. Defendant Pamela Jo Bondi is the Attorney General of the United States. She is sued in her official capacity.

## FACTS

### Background on F-1 Student Visa and Status

17. Under the statute, noncitizens can enroll in government-approved academic institutions as F-1 students. *See* 8 U.S.C. § 1101(a)(15)(F). Students enter the United States on an F-1 visa issued by the U.S. Department of State. Then, once they enter the United States with an F-1 visa, students are granted F-1 student status and permitted to remain in the United States for the duration of status (D/S) as long as the student continues to meet the requirements established by the regulations governing the student's visa classification in 8 C.F.R. § 214.2(f), such as maintaining a full course of study and avoiding unauthorized employment. DHS's Student and

5

Exchange Visitor Program (SEVP) is in charge of administering the F-1 student program and tracking information on students in F-1 student status.

18. An academic institution must obtain formal approval from DHS before it can sponsor a student's F-1 status. An institution must first file an application for School Certification through the Student and Exchange Visitor Information (SEVIS) system, a SEVP-managed Internet-based system to track and monitor schools and noncitizen students in the United States. *See* 8 C.F.R. § 214.3.

19. "Each school that educates F-1 students has a Designated School Official ('DSO') who monitors, advise, and oversees the students attending his or her institution." *Jie Fang*, 935 F.3d at 175.

20. Noncitizen students, are "subject to an array of regulations." *Id*. (citing 8C.F.R. § 213.2(f)). "These include maintaining a full course of study[.]" *Id*. (citing 8 C.F.R. § 214.2(f)(6)). Students may also participate in "two types of practical training programs." *Id*. (citing 8 C.F.R. § 214.2(f)(10)(ii)). "Curricular Practical Training ('CPT') is any 'alternative work/study, internship, cooperative education, or any other type to required internship or practicum that is offered by sponsoring employers through cooperative agreements with the school' that is an 'integral part of an established curriculum.'" *Id*. (quoting 8 C.F.R. § 214.2(f)(1)(i)). CPT usually occurs during the course of study and before its completion.

21. "The other is Optional Practical Training ('OPT') which consists of temporary employment that is 'directly related to the student's major area of study.'" *Id*. (quoting 8 C.F.R. § 214.2(f)(1)(ii)). OPT usually occurs at the end of the completion of the studies.

22. "Once a student has completed his or her course of study and any accompanying practical training, he or she has sixty days to either depart the United States or transfer to another accredited academic institution and seek a transfer of the F-1 visa." *Id*. (citing 8 C.F.R. §

214.2(f)(5)(iv)). "If a student voluntarily withdraws from the F-1 program, he or she has fifteen days to leave the United States." *Id*. "A student who 'fails to maintain a full course of study without the approval of the DSO or otherwise fails to maintain status' must depart the United States immediately or seek reinstatement." *Id*. (quoting 8 C.F.R. § 214.2(f)(5)(iv)).

23. Under the regulation, DSOs at schools must report through SEVIS to SEVP when a student fails to maintain status. *See* 8 C.F.R. § 214.3(g)(2). SEVIS termination is governed by SEVP policy and regulations.

24. The regulations distinguish between two separate ways a student may fall out of status: (1) a student who "fails to maintain status"; and (2) an agency-initiated "termination of status." For failure to maintain F-1 student status under the SEVIS system, students fail to maintain their status when they do not comply with the regulatory requirement, such as failing to maintain a full course of study, engaging in unauthorized employment, or other violations of their requirements under 8 C.F.R. § 214.2(f). In addition, 8 C.F.R. § 214.1(e)-(g) outlines specific circumstances where certain conduct by any nonimmigrant visa holder, such as engaging in unauthorized employment, providing false information to DHS, or being convicted of a crime of violence with a potential sentence of more than a year, "constitute a failure to maintain status."

25. For the agency-initiated termination of F-1 student status under the SEVIS system, DHS's ability to terminate F-1 student status "is limited by [8 C.F.R.] § 214.1(d)." *Jie Fang*, 935 F.3d at 185 n.100. Under this regulation, DHS can terminate F-1 student status under the SEVIS system only when: (1) a previously granted waiver under 8 U.S.C. § 1182(d)(3) or (4) is revoked; (2) a private bill to confer lawful permanent residence is introduced in Congress; or (3) DHS publishes a notification in the Federal Register identifying national security, diplomatic, or public safety reasons for termination.

26. Accordingly, the existence of a "criminal record" that reflects dismissed charges is

7

not a basis for termination of a SEVIS record of revocation of F 1 status.

27. If the Government wishes to remove a non-citizen based on alleged criminal activity or convictions, section 240 of the Immigration and Nationality sets forth a process for doing so. 8 USC 1229a.

28. The Immigration Judge has no ability to review the F-1 student status termination in the SEVIS system because the process is collateral to removal proceedings. *See Jie Fang*, 935 F.3d at 183.

29. For students who have failed to maintain F-1 status may seek reinstatement. Under regulations, "a district director in the U.S. Citizenship and Immigration Services ('USCIS') 'may consider' reinstating a student who demonstrates that he or she: 1) 'has not been out of [valid F-1] status for more than 5 months at the time of filing the request for reinstatement' or that 'the failure to file within the 5 month period was the result of exceptional circumstances and that the student filed the request for reinstatement as promptly as possible under these exceptional circumstances;' 2) does 'not have a record of repeated or willful violations of Service regulations'; 3) is pursuing or intends to pursue a full course of study; 4) has not engaged in unauthorized employment; 5) is not deportable on any ground other than 8 U.S.C. § 1227(a)(1)(B) and (C)(i); and 6) can prove that the violation of status resulted from circumstances beyond the student's control, or that the violation relates to a reduction in the student's course load that would have otherwise been permitted if authorized by the school and that failure to approve reinstatement would result in extreme hardship to the student." *Jie Fang*, 935 F.3d at 176 (citing and quoting 8 C.F.R. § 214.2(f)(16)(i)(A)-(F)).

**Termination of Student Doe's F-1 Student Visa and Status**

30. Plaintiff is a 24-year-old graduate of Tufts University who has been employed pursuant to the OPT program.

31. Plaintiff is a British Citizen.

32. Plaintiff first came to the United States in September of 2019 under an F-1 student visa to pursue an undergraduate program at Tufts. He graduated with a Bachelor of Science in Mechanical Engineering and a Bachelor of Science in Computer Science in 2024.

33. Starting in Fall of 2024, Plaintiff secured a position at a major biotechnology startup in Cambridge Massachusetts, advancing the company's mission of advancing therapeutics with cutting edge technology as a manufacturing engineer and automation engineer.

34. The Plaintiff has never violated the terms of his student status and has at all times maintained either full time student status or engagement in OPT.

35. The Plaintiff has never been convicted of a crime, has never been placed into removal proceedings and has been admitted to the United States multiple times in F1 student status.

36. In February of 2024, the Plaintiff was arrested by the Medford Police Department. The arrest arose out of an argument with his girlfriend in attempting to take some belongings back from her apartment. In the course of the argument, the Plaintiff is alleged to have a kicked a door to a bedroom. The Plaintiff was charged with 'Assault and Battery on Household Member', 'B &E for Misdemeanor' and 'Destruction of Property.' All charges were dismissed by Commonwealth on or about June 26th, 2024.

37. Dismissed criminal charges provide no lawful basis to terminate SEVIS records, to terminate F1 status or imitate removal proceedings.

38. However, in April of, 2025, Tufts University informed Plaintiff that his SEVIS record was terminated. The University explained that the notation that can be seen in Plaintiff's SEVIS record is the following: "OTHERWISE FAILING TO MAINTAIN STATUS – Individual identified in criminal records check and/or has had their VISA revoked. SEVIS record has been terminated."

39.     Plaintiff has not been convicted of any crime and all criminal charge were dismissed. He has complied with all rules and regulations as someone with student status. In spite of this, his visa was revoked, and his SEVIS record (F-1 student status) was terminated.

40.     This termination has put Plaintiff's education, life, and career trajectory at risk. In particular, he is no longer authorized to work as Manufacturing and Automation Engineer, which will severely affect his ability to remain in the United States, to continue to receive work authorization under OPT program and the OPT STEM extension program and return to Tufts to begin a master's degree as he had planned.

41.     This termination may also subject Plaintiff to immediate detention and deportation— an outcome other students have already faced.[6]

## CLAIMS FOR RELIEF

### COUNT 1
### VIOLATION OF THE DUE PROCESS CLAUSE OF THE FIFTH AMENDMENT TO THE UNITED STATES CONSTITUTION
### (Unlawful F-1 Student Status Termination)

42.     The foregoing allegations are realleged and incorporated herein.

43.     The United States Constitution requires notice and a meaningful opportunity to be heard. *See Choeum v. I.N.S.*, 129 F.3d 29, 38 (1st Cir. 1997) ("At the core of [a noncitizen's] . . . due process rights is the right to notice and the nature of the charges and a meaningful opportunity to be heard.").

44.     Defendants terminated Plaintiff's F-1 student status under the SEVIS system without (i) notifying him about this termination decision, (ii) failing to provide Plaintiff with an individualized hearing before an impartial adjudicator, and (iii) failing to provide Plaintiff with adverse evidence and an opportunity to confront and respond to such evidence.

---

[6] [10] *See, e.g., Ozturk v. Trump*, No. 25-cv-10695-DJC, 2025 U.S. Dist. LEXIS 64831 (D. Mass. Apr. 4, 2025).

45. Defendants' disregard for complying with the well-established due process principles violated Plaintiff's due process rights.

## COUNT 2
## VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT—ARBITRARY AND CAPRICIOUS AGENCY ACTION
### (Unlawful F-1 Student Status Termination)

46. The foregoing allegations are realleged and incorporated herein.

47. Defendants' termination of Plaintiff's F-1 student status under the SEVIS system is a final agency action. *See Jie Fang*, 935 F.3d at 182 ("[t]he order terminating these students' F-1 visas marked the consummation of the agency's decision-making process and is therefore a final order"). The facts and circumstances surrounding the SEVIS termination, specifically the mass number of concerted terminations effectuated on novel legal grounds establish that the action was the consummation of the agency's decision-making process.

48. Defendants' termination violates the Administrative Procedure Act (APA) and should be set aside pursuant to 5 U.S.C. § 706(2)(A) as arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with the law, including the regulatory regime at 8 C.F.R. § 214.1(d).

49. Under 8 C.F.R. § 214.1(d), Defendants have no statutory or regulatory authority to terminate Plaintiff's SEVIS record or status based simply on dismissed criminal charges.

50. Moreover, in making its finding that Plaintiff's student status should be terminated, Defendants did not consider any facts relevant to Plaintiff's individual circumstances nor did it provide any explanation, let alone reasoned explanation, justifying its determination. Defendants' lack of consideration of any relevant facts specific to Plaintiff before making its determination was arbitrary and capricious and in violation of the APA.

## COUNT 3
## VIOLATION OF THE DUE PROCESS CLAUSE OF THE FIFTH AMENDMENT TO THE UNITED STATES CONSTITUTION

**(Unlawful Detention)**

51. The foregoing allegations are realleged and incorporated herein.

52. The Fifth Amendment requires fair, pre-deprivation process when a person's liberty hangs in the balance.

53. In light of the unlawful termination of Plaintiff's SEVIS record and F-1 student status, Plaintiff is at risk of abrupt detention without prior notice. Plaintiff is a STEM University graduate with no criminal convictions. Plaintiff has ensured that he complied with all rules. *See Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) (finding immigration detention must further twin goals of (1) ensuring noncitizen's appearance during removal proceedings and (2) preventing danger to the community). There is no credible argument for Plaintiff's immigration detention, preventing him from pursuing his studies.

54. The significant increase in the number of noncitizens detained with no criminal convictions or other immigration violations on dubious or nonexistent legal grounds renders Plaintiff's risk of sudden and arbitrary detention reasonably foreseeable and non-speculative.

**PRAYER FOR RELIEF**

Plaintiff asks that this Court grant the following relief:

(1). Assume jurisdiction over this matter;

(2). Declare that Defendants' termination of Plaintiff's F-1 student status under the SEVIS system without affording him sufficient notice and opportunity to be heard violated Plaintiff's Fifth Amendment due process rights and the APA (including under 8 C.F.R. § 214.1(d));

(3). Issue an injunction requiring Defendants to provide adequate individualized proceedings before an impartial adjudicator for Plaintiff in which he will be entitled to review any adverse evidence and respond to such evidence prior to determining whether Plaintiff's F-1 student status should be terminated;

(4). To order Defendants to reinstate Plaintiff's valid F-1 student status under the SEVIS system at Tufts University and return to his prior or provide Plaintiff with a reasonable period to

maintain his valid F-1 status by allowing him to transfer to another DHS-approved OPT position if his reinstatement with his former employer is not accepted;

(5). Enjoin Defendants from impeding or interfering with any current or subsequent applications filed by Plaintiff including applications for STEM OPT extension;

(6). Enjoin Defendants from detaining Plaintiff pending the instant case;

(7). Award attorney's fees and costs fees under the Equal Access to Justice Act, 28 U.S.C. § 2412(b); and

(8). Order any further relief this Court deems just and proper.

PLAINTIFF,

By and through his Counsel,

/s/Carl Hurvich
Carl Hurvich (MA B.B.O.698179)
Brooks Law
10 High Street, Ste 3.
Medford, MA 02155
(617) 245 8090
Carl@Brookslawfirm.com

Date: April 20 2025